In the
United States Court of Appeals
For the Seventh Circuit

No. 99-3325

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

MELVIN LOGAN,

Defendant-Appellant.


Appeal from the United States District Court
for the Central District of Illinois.
No. 98 CR 30049--Jeanne E. Scott, Judge.


Argued SEPTEMBER 12, 2000--Decided March 14,
2001


   Before POSNER, COFFEY, and MANION, Circuit
Judges.

   COFFEY, Circuit Judge.  On July 10, 1998,
a federal grand jury in the Central
District of Illinois returned a ten count
indictment charging Melvin Logan with two
counts of conspiracy to distribute
cocaine and cocaine base ("crack")
(counts 1-2); one count of distribution
of cocaine and crack (count 3); three
counts of money laundering (counts 4, 6,
and 8); three counts of engaging in
monetary transactions in criminally
deprived property (counts 5, 7, and 9),
and one count of conspiracy to launder
money (count 10). On January 12, 1999,
Logan pled guilty to counts one and ten
of the indictment and the government
agreed to dismiss the other eight counts.
After denying Logan's motions to withdraw
his guilty pleas, the judge sentenced
Logan to 360 months' imprisonment on
count one (conspiracy to distribute
cocaine and crack) and 57 months'
imprisonment on count ten (conspiracy to
launder money), each of the sentences to
run concurrently with each other. Logan
also received five years' supervised
release on count one and three years'
supervised release on count ten, each

term to run concurrently with each other, and a $100 special assessment. We affirm.

I.   BACKGROUND

Melvin Logan's appeal focuses on the denial of his motion to withdraw his guilty pleas, and, thus, the underlying facts of his offense are immaterial to our discussion. Suffice it to say that between May 1995 and August 1995, Logan purchased and sold cocaine in Springfield, Illinois. Based on the statements of multiple cooperating individuals and as Logan agreed to in his plea agreement, he was responsible for the distribution of more than 1.5 kilograms of cocaine during the relevant time frame. Furthermore, Logan used the proceeds from his illicit drug trade to purchase and/or renovate a number of real estate holdings in Illinois.

A. The Plea Agreement

The plea agreement Logan signed contained the following paragraph:

I have read the entire plea agreement carefully and have discussed it with my attorney. I fully understand this agreement, and I agree to it voluntarily and of my own free will. I am pleading guilty because I am in fact guilty, and I agree that the facts stated in this agreement about my criminal conduct are true. No threats, promises, or commitments have been made to me or to anyone else, and no agreements have been reached, express or implied, to influence me to plead guilty other than those stated in this written plea agreement.

(Emphasis added). The agreement also contained another paragraph stating: "No threats, promises, or representations have been made, nor agreements reached, express or implied, to induce my client to plead guilty other than those stated in this written agreement." (Emphasis added). Logan's attorney signed just below this paragraph.

B. Plea Hearing

On January 12, 1999, the following dialogue took place:/1

THE COURT:  Okay. You indicated you have some degree of problem with reading. Do

you have any doubt that you understand
what you read and signed?

LOGAN:  Yes.

THE COURT:  I'm sorry?

LOGAN:  No, I don't have no doubt.

THE COURT:  Do you understand what you
have read and signed?

LOGAN:  Yes.

THE COURT:  Okay: Does the Plea agreement
represent in its entirety any
understanding you have with the
government?

LOGAN:  Yes.

THE COURT:  Has anyone else made any
different promises to you in an effort to
cause you to plead guilty in this case?

LOGAN:  No.

Accordingly, the court accepted his
pleas of guilt to counts one and ten of
the indictment. At the conclusion of the
hearing, and after the judge had accepted
Logan's guilty plea, Logan's attorney
stated:

One thing I would like to state for the
record on behalf of Mr. Logan; amongst
the conversations with Mr. Logan
pertaining to these matters, certain
discussions and representations were made
which do not have to be spread (sic) of
record here involving the other family.

And Mr. Logan was concerned that what I
advised him pertained to what might
happen down the road pertained to other
matters that would be fulfilled.
And I'm only stating that for the record;
there were discussions pertaining to
family members also. And I have no doubt
that any discussions with the Government
from their indication will be fulfilled,
based on the present facts.

In response, the prosecutor stated:

  Your honor, just with respect to the
last comments made by Mr. Costello. He's
referring, I believe, to statements that
were in a meeting we had last night that
included the attorney, Mr. Lorcher, for

the defendant's father, Marvin Logan. And also was attended by one of his brothers, J.B. Logan, and a sister, Pricilla Logan.

And in the course of that meeting, we were discussing not only this criminal case but also the Government's offers and our attitude toward resolution of the civil forfeiture matter in which those other parties and that attorney were involved.

And so when Mr. Costello is talking about our fulfillment of our statements regarding that, he's not referring, I don't believe, to any condition or of anything relating to the defendant's guilty plea. We certainly do intend to pursue in good faith our negotiation to settle the civil proceeding, but that's unrelated to the Defendant's guilty plea. It is not a condition or anything offered quid pro quo relating to this guilty plea. Everything relating to this guilty plea are (sic) in the four corners of that plea agreement and the attached cooperation agreement.

(Emphasis added). Logan's attorney responded and stated he agreed with the prosecutor that the plea agreement contained all the terms negotiated by the parties:

I understand that and I accept that. No conditions were made on matters that Mr. Logan has plead guilty to the Court. These discussions were not only last night, but on other evenings, and may have dealt with some discussion of criminal possibilities. Again, I'm just saying those discussions were all made known to Mr. Logan, and he's plead guilty of his own accord, Judge.

(Emphasis added).

C. Logan's Motions to Enforce the Plea Agreement

On June 25, 1999, Logan's attorney filed a "Motion to Enforce Plea Agreement" alleging that the government had made oral promises not to prosecute his father, his sister, or his brothers for their alleged involvement in the drug distribution scheme. However, according to Logan's motion, the government was violating the plea agreement in that it was allegedly intending to prosecute

Logan's brothers for the same crimes as Logan, and to prosecute Logan's sister and father for aiding and abetting the crime of money laundering.

On June 30, 1999, Logan's attorney filed a "Second Motion to Vacate Plea Agreement or in the Alternative to Enforce Plea Agreement" that reiterated the allegation that Logan had been induced to plead guilty in exchange for a promise that his family would not be criminally prosecuted. Logan's second motion also asserted that the government had induced Logan to plead guilty by promising that civil forfeiture proceedings would not be instituted against properties the government believed were purchased or renovated with funds gained from his criminal activities.

D. Logan's Sentencing Hearing

At the August 31, 1999 sentencing hearing, the district court repeated its findings supporting its earlier denial of the defendant's motions to withdraw his guilty plea, stating:

With respect to the Government's request that I make findings concerning the plea agreement; I believe I did at the time of the plea agreement and I have refused to set it aside, but I will again note that based upon my review of the record, and my recollection of the hearing, the Court found that the Defendant voluntarily and knowingly waived his rights and the Court continues to be of the opinion that he did so at the time of the plea . . . .

The Court has found, I believe previously, and continues to find that there was no breach of the plea agreement by the government. The defendant so testified during the first part of this hearing.

(Emphasis added).

On appeal, Logan claims the government orally promised him that, in return for his guilty pleas, none of his family members would be prosecuted for related crimes and also that all civil forfeiture proceedings related thereto would be dismissed. He maintains the district court abused its discretion in refusing to allow him to withdraw his guilty pleas after the government allegedly breached

such promises.

II.  ANALYSIS

As we stated in United States v. Milquette, 214 F.3d 859, 861 (7th Cir. 2000),

Rule 32(e) of the Federal Rules of Criminal Procedure authorizes a district judge to permit the withdrawal of a guilty plea "if the defendant shows any fair and just reason." However, once a district court has accepted a guilty plea, the defendant does not have an unlimited right to withdraw the plea; rather, the burden is on the defendant to demonstrate a fair and just reason for such withdrawal. United States v. Schilling, 142 F.3d 388, 398 (7th Cir. 1998). We review a district court's denial of a motion to withdraw a guilty plea for abuse of discretion. United States v. Pike, 211 F.3d 385, 388 (7th Cir. 2000). In reviewing the district court's decision, we will uphold factual findings as to whether the defendant has demonstrated a fair and just reason unless they are clearly erroneous. United States v. LeDonne, 21 F.3d 1418, 1423 (7th Cir. 1994).

Logan argues that he agreed to plead guilty based on an oral promise by the government that his family members would not be charged criminally nor subjected to civil forfeiture proceedings if he pled guilty. According to Logan, the oral promise was a term of the plea agreement. Logan further argues that even if the government did not make an express promise not to prosecute his family or institute forfeiture proceedings, the promise was implicit in the plea negotiations. In support of his arguments, Logan points to the comments made by his attorney at the plea hearing regarding Logan's family members.

However, the record fails to support Logan's claims. The plea agreement contained Logan's signed statement that: "No threats, promises, or commitments have been made to me or to anyone else, and no agreements have been reached, express or implied, to influence me to plead guilty other than those stated in this written plea agreement." (Emphasis added). Logan's attorney similarly attested that: "No threats, promises, or

representations have been made, nor agreements reached, express or implied, to induce my client to plead guilty other than those stated in this written agreement." (Emphasis added). It is clear that the written plea agreement not only fails to contain a provision promising that Logan's family would not be prosecuted, but rather specifically states that no other representations, promises, or agreements "have been reached, express or implied, to influence [Logan] to plead guilty . . . ."

The testimony at the January 12, 1999 change of plea hearing makes it eminently clear that the government did not promise Logan that his family would not be criminally prosecuted or subjected to forfeiture proceedings. Logan testified under oath at the plea hearing that: (1) he had an opportunity to review the plea agreement with his attorney; (2) he understood the terms of the agreement; and (3) no additional inducements had been offered to him to plead guilty that were not contained in the written agreement. Responding to the vague references by Logan's counsel at the conclusion of the hearing regarding conversations concerning Logan's family, the prosecutor specifically stated that they were "unrelated to the Defendant's guilty plea. It is not a condition or anything offered quid pro quo relating to this guilty plea. Everything relating to this guilty plea are (sic) in the four corners of that plea agreement and the attached cooperation agreement."

Neither Logan nor his attorney disagreed with nor in any way challenged the prosecutor's statement. In fact, Logan's attorney agreed with the prosecutor, stating: "No conditions were made on matters that Mr. Logan has plead guilty to the Court." Furthermore, when Logan pled guilty, he affirmatively stated that no representations, promises, or agreements, other than the plea agreement, "have been reached, express or implied, to influence [him] to plead guilty . . . ." It is clear that the written plea agreement in this case is complete and does not contain a provision promising that Logan's family would not be prosecuted. Furthermore, the consensus between the prosecutor, defense counsel, and Logan, at the change of plea hearing demonstrates that no outside agreements

or inducements influenced the plea agreement. All parties agreed at the plea hearing that the plea agreement and the cooperation agreement constituted the entire agreement.

"The presumption of verity [of a defendant's statements in pleading guilty] is overcome only if the defendant 'satisfies a heavy burden of persuasion.'" United States v. Messino, 55 F.3d 1241, 1248 (7th Cir. 1995) (quoting United States v. Malave, 22 F.3d 145, 148 (7th Cir. 1994)). Logan has failed to satisfy that burden.

The decision of the district court is

AFFIRMED.


/1 Logan stated that he was 43 years old, had completed the 11th grade, and read at about the 5th or 6th grade level.