In the

# United States Court of Appeals
## For the Seventh Circuit

No. 06-3743

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

*v.*

IVY GENE BOWLIN,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Southern District of Illinois.
No. 06-CR-40011-JPG—**J. Phil Gilbert**, *Judge.*

ARGUED SEPTEMBER 24, 2007—DECIDED JULY 17, 2008

Before POSNER, FLAUM, and WOOD, *Circuit Judges.*

WOOD, *Circuit Judge.* This appeal is before us because
Ivy Gene Bowlin was frustrated in his attempt to with-
draw his plea of guilty to a three-count indictment that
charged violations of the federal drug laws. If he cannot
succeed in withdrawing the plea, Bowlin would like
his sentence corrected. He argues that the district court
selected the wrong sentence because it erred in its ap-
plication of the U.S. Sentencing Guidelines, both in deter-
mining his relevant conduct and in applying the enhance-
ment for use of a minor in committing an offense. He
also claims that the Government should not have been

permitted to include drug quantities in his indictment as a basis for enhancing his sentence. Finding no error, we affirm the district court in all respects.

## I

On February 8, 2006, a federal grand jury returned a three-count indictment against Bowlin, charging him with conspiracy to manufacture and distribute 50 grams or more of a mixture and substance containing methamphetamine and with two counts of distributing methamphetamine, each on a different date in late December of 2005, all in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B), and 846. On May 4, 2006, Bowlin pleaded guilty to all three counts. During this proceeding, the district court placed Bowlin under oath and, prior to accepting the plea, gave Bowlin the advice required by FED. R. CRIM. P. 11. As it went through the advice required by Rule 11(b), the district court frequently asked Bowlin whether he understood what was being said and whether he had any questions. Each time, Bowlin replied that he did understand, and that he had no questions. Part of this exchange went as follows:

> THE COURT: Do you understand you can persist in a plea of not guilty and have a trial, but if you plead guilty to these charges, you are waiving your right to a trial and there will be no trial, and you will be sentenced as if you were found guilty by a jury. Do you understand that?
>
> THE DEFENDANT: Yes, Your Honor.
>
> THE COURT: It's my understanding you wish to enter into an open plea to these charges; is that correct?

> THE DEFENDANT: Yes.
>
> THE COURT: An open plea of guilty?
>
> THE DEFENDANT: Yes, Your Honor.
>
> THE COURT: Have you talked about the sentencing guidelines and how they might apply in your case?
>
> THE DEFENDANT: Yes, Your Honor.
>
> THE COURT: Do you understand this Court cannot determine what guideline applies to your case until it has received and reviewed a Presentence Investigation Report. That the guidelines are advisory now, and the Court will consider those guidelines as well as factors enumerated in 3553(a) of Title 18 when it sentences you. Do you understand that?
>
> THE DEFENDANT: Yes, Your Honor.

The prosecution then laid out the factual basis for its case; the court asked Bowlin whether those representations were correct; and Bowlin confirmed that they were. The court then asked Bowlin how, with respect to each count, he wished to plead; Bowlin replied "Guilty." In response to further questioning, Bowlin confirmed that no threats or promises had been made to him in an effort to induce the guilty plea and that he was acting freely and voluntarily. Satisfied with Bowlin's responses, the court accepted the plea and set a sentencing date of August 3, 2006.

On June 30, 2006, the probation officer completed a Presentence Investigation Report ("PSR") for Bowlin. The record reflects that Bowlin received the PSR in early July of 2006, roughly one month before his August 3 sentencing date. Like many defendants before him, Bowlin was unpleasantly surprised to discover that the PSR

delved into not only the charged offenses, but also additional drug transactions that the Government had learned about from a confidential source. Though the Government had acquired this information months before, the prosecution had not disclosed it to Bowlin or to his counsel, because the identity of the informant, Tonya Stone, remained confidential during those earlier phases of the proceedings. Thus, only after reading the PSR did Bowlin learn that Stone had told the Government that from November 2001 until spring of 2003, she was getting two to five grams of methamphetamine from Bowlin "every day that [she] was awake." Stone said that she and Bowlin engaged in a daily trade, in which she gave him pseudoephedrine pills in exchange for methamphetamine. Though these were not the transactions described in the distribution counts of Bowlin's indictment, they overlapped with the period of the charged conspiracy. The PSR therefore included the 1.3 to 1.8 kilograms of methamphetamine that Bowlin had distributed to Stone as relevant conduct under U.S.S.G. § 1B1.3.

The addition of this additional quantity naturally had a significant impact on the sentence recommended in the PSR. Disturbed, Bowlin promptly called his appointed counsel, Daniel Goggin, wanting to discuss this turn of events. But Goggin was preparing for trial in another case, and because he believed "there wasn't anything unusual about [Bowlin's] complaints" regarding the PSR, Goggin did not manage to meet with Bowlin to discuss the PSR until just a couple of days before the August 3 sentencing hearing. Realizing then that Bowlin's distress over the previously undisclosed witness did raise a significant issue, Goggin immediately drafted objections to certain portions of the PSR. He filed those objections on the day of the initial sentencing hearing, August 3, 2006. Goggin admitted to the court that he

had "no good excuse" for such a tardy response, but he asked the court to consider the objections nonetheless, explaining that Bowlin's right to due process ought not suffer on account of his lawyer's delay. After the Government conceded that it had inadvertently failed to disclose the statement to Bowlin at a more appropriate time, the district court granted Bowlin a continuance of three weeks, so that Bowlin and his counsel could prepare for the hearing in light of the new information.

When the sentencing hearing reconvened three weeks later, on August 24, 2006, the district court began by confirming with Bowlin that Bowlin had received the PSR and had an opportunity to review and discuss it with his counsel. Bowlin also acknowledged his awareness of the objections Goggin had filed and stated that he had no further objections to the PSR. At that point, Goggin interjected that it was "surpris[ing]" and "unfair" for the Government to spring the previously undisclosed testimony from Stone and the additional 1.3 to 1.8 kilograms of methamphetamine on Bowlin so late in the game. At that point, the district court explicitly offered Bowlin the opportunity to withdraw his guilty plea:

> THE COURT: Well, does he want to withdraw his plea and go to trial?
>
> MR. GOGGIN: Just one second, Judge. Let me ask him that. At this point, he doesn't Your Honor.
>
> THE COURT: He doesn't?
>
> MR. GOGGIN: Right.
>
> THE COURT: Are you wanting a continuance of this sentencing hearing so you can subpoena witnesses?
>
> MR. GOGGIN: That's correct, Your Honor.

After this exchange, the district court allowed the Government to present the testimony of its witnesses. As Bowlin had requested, the court then adjourned the hearing until October 3, 2006, to give Bowlin time to subpoena his own witnesses and arrange for their attendance.

Only when the proceedings reconvened on October 3, 2006, did Bowlin (through counsel) make his oral motion to withdraw his guilty plea. When the court asked whether he was ready to proceed, the following exchange ensued:

> MR. GOGGIN: Your Honor, I'm ready to do that [proceed], but I would have a request for what it's worth. The last time we were in court, if you recall, you asked me if [my] client wanted to withdraw his plea, and he said no, he was under shock with everything else that he was seeing in his [PSR]. But he and I have spent a lot of time together in the last couple weeks, and he's come to the conclusion if that's still available to him, he will do that. If not we will finish the hearing.
>
> THE COURT: Mr. Goggin —
>
> MR. GOGGIN: I want to get this case over, too, Judge. He was caught off guard by that last time.
>
> THE COURT: How many weeks ago? When was this last hearing?
>
> MR. NORWOOD [for the prosecution]: Last time we were here, actually, in court?
>
> THE COURT: Yes. If he wanted to withdraw his plea, file something.
>
> PROBATION OFFICER MILLER: I believe it was August 24th.

> THE COURT: For the sake of the record, this is October.
>
> MR. GOGGIN: I know. And I can't say the exact dates I was up in Mt. Vernon to see him. We discussed it thoroughly and I said, "If you come to that conclusion, please let me know before trial." And today is when I talked to him again. I apologize for all of that. It's his wish, but if it's not granted, we're ready for the hearing.
>
> THE COURT: Well, if you're making an oral motion to withdraw your plea, the oral motion is denied.
>
> MR. GOGGIN: Okay.

The court explained that Bowlin had offered no basis for withdrawing his plea and that he had already had plenty of time to decide what to do. Observing that a defendant cannot decide to change his plea simply because "he doesn't like the way the sentencing hearing is going or the way the presentence report came out," the district court underscored the fact that the previously undisclosed statement of the confidential source had no bearing on guilt or innocence, but instead mattered only for sentencing. The district court then proceeded with the remainder of the sentencing hearing.

After hearing Bowlin's evidence, the court began by adopting the PSR as its own findings. It specified that the offense involved 1.5 kilograms to 5 kilograms of a mixture and substance containing methamphetamine, which supported a base offense level of 34 for purposes of the Sentencing Guidelines. The court then added two more points under § 3B1.4 for use of a minor to commit the offense and subtracted three for acceptance of responsibility, for a final offense level of 33; Bowlin's criminal

history category was VI. Taking into account the advisory Guidelines range, the parties' recommendations, and the factors set forth in 18 U.S.C. § 3553(a) (including especially Bowlin's extensive criminal history), the court sentenced Bowlin to 360 months' imprisonment, five years' supervised release, a $750 fine, and a $300 special assessment. Though the prison term of 360 months was above the advisory Guidelines range, the district court explained that the additional time was appropriate because of Bowlin's "abysmal" criminal record (which earned him 24 criminal history points, well above the number needed for category VI) and the danger he posed to the public. The court noted that the sentence was still below the statutory maximum of 480 months.

## II

We first address Bowlin's claim that the district court erred in denying his belated motion to withdraw his guilty plea. A defendant's right to withdraw a plea of guilty before sentencing is not absolute, "although the court may allow him to do so if he has a 'fair and just reason' for doing so." *United States v. Carroll*, 412 F.3d 787, 792 (7th Cir. 2005); FED. R. CRIM. P. 11(d)(2)(B). This court reviews a district court's denial of a motion to withdraw a plea of guilty for an abuse of discretion. We have cautioned that a "defendant seeking to [withdraw a guilty plea] faces an 'uphill battle' after a thorough Rule 11 colloquy" has already occurred. *United States v. Bradley*, 381 F.3d 641, 645 (7th Cir. 2004) (quoting *United States v. Bennett*, 332 F.3d 1094, 1099 (7th Cir. 2003)); see also *United States v. Logan*, 244 F.3d 553, 558 (7th Cir. 2001) ("The presumption of verity [of a defendant's statements in pleading guilty] is overcome only if the defendant

satisfies a heavy burden of persuasion." (brackets in *Logan*) (internal quotation marks omitted)).

One "just and fair reason" for withdrawing a defendant's plea of guilty is that the plea was not voluntarily made. *United States v. Ellison*, 835 F.2d 687, 692-93 (7th Cir. 1987). As the Government points out, however, this principle does not override the presumption that the record created by a Rule 11 inquiry is true. See, *e.g.*, *United States v. Trussel*, 961 F.2d 685, 689 (7th Cir. 1992).The exchanges reproduced above show that the district court engaged in an extensive Rule 11 colloquy with Bowlin, thoroughly informing him of his rights and ensuring that he understood the stakes involved in his plea. Even so, Bowlin now urges that his plea was not "intelligent and voluntary" because, not knowing about Stone's testimony when he pleaded, he was mistaken or misinformed about the "reasonable variables that might cause his possible sentence to fluctuate within predictable parameters."

Bowlin sees his case as falling squarely within the framework of *United States v. Bradley*, *supra*, in which we found that a guilty plea was not "intelligent and voluntary" because of a mutual mistake about the essential elements of the charged offense. As a result of the mistake, "the facts to which Mr. Bradley admitted, both in the plea agreement and at the Rule 11 colloquy, did not establish the § 924(c) offense with which he was charged." 381 F.3d at 646. We therefore could "not say Mr. Bradley fully understood the nature of the charge to which he admitted guilt"; his plea was not knowing and voluntary, and the district court's denial of his request to withdraw it was improper. *Id.* at 645-46.

We are not persuaded by Bowlin's effort to squeeze his case into *Bradley*'s result. A mistake about the substantive offense goes to the heart of the guilty plea; a mistake about the possible sentence—especially when the defendant has been warned that the judge will determine the sentence based on information collected by the Probation Office and at any sentencing hearing—does not. We have repeatedly held that "the fact that a defendant underestimated his sentence when entering his plea is not a fair and just reason to permit him to withdraw that guilty plea." *United States v. Gilliam*, 255 F.3d 428, 433-34 (7th Cir. 2001) (quoting *United States v. Knorr*, 942 F.2d 1217, 1220 (7th Cir. 1991)).

The district court was also entitled to take into account the timing of Bowlin's request. As we noted earlier, Bowlin received the PSR in early July of 2006, about one month before the initially scheduled date of his sentencing. When Bowlin's counsel requested additional time to review the PSR in light of the new information about the confidential source, the district court obliged with a three-week continuance. On August 24, when the initial sentencing hearing finally got underway, the district judge on his own initiative asked counsel if Bowlin wished to withdraw his plea of guilty, and both Bowlin and the lawyer said no. The court was entitled to take Bowlin seriously when he represented that all he wanted was additional time to subpoena witnesses. The court gave him that time.

Not until the October 3, 2006, proceedings, three months after Bowlin first received the PSR and learned the critical information, did Bowlin attempt to withdraw his plea. Nothing in this chain of events would support a finding that Bowlin's plea of guilty was not knowing and voluntary. The district court thus did not abuse its discretion when it denied Bowlin's motion to withdraw his plea.

**III**

Our rejection of Bowlin's request to withdraw his plea means that we must address his challenges to his sentence. He contests both the two-point enhancement under § 3B1.4 of the Sentencing Guidelines for use of a minor to commit a crime, and the district court's calculation of relevant conduct under § 1B1.3. We examine each of these points in turn, reviewing the district court's application of the Sentencing Guidelines *de novo* and its factual determinations for clear error. *United States v. Warren*, 454 F.3d 752, 762 (7th Cir. 2006).

A

Section 3B1.4 authorizes a two-level enhancement where the defendant "used or attempted to use" a minor to commit the offense. Application Note 1 further specifies that the phrase "used or attempted to use" includes all of the following: "directing, commanding, encouraging, intimidating, counseling, training, procuring, recruiting, or soliciting." In addition, "[a]s this Court held in *United States v. Ramsey*, 'use' requires the affirmative involvement of the minor in the crime." *United States v. Hodges*, 315 F.3d 794, 802 (7th Cir. 2003) (citing *Ramsey*, 237 F.3d 853, 859 (7th Cir. 2001)). "Use" of a minor within the meaning of this section can be established both "when the minor is a partner in the criminal offense . . . as well as when the minor's role is subordinate to that of the criminal defendant." *Id.* (alteration in *Hodges*) (quoting *Ramsey*, 237 F.3d at 859). We have upheld the application of this enhancement even when the defendant's "use" of the minor is minimal. See, *e.g.*, *United States v. Vivit*, 214 F.3d 908, 920 (7th Cir. 2000) (in a mail fraud and

false claims case, applying the minor enhancement to defendant, a physician, who had minor patients (ages 16, 9, and 7) sign attendance sheets that fraudulently inflated the number of visits they had paid to defendant).

The district court did not clearly err when it found that Bowlin's use of a minor warranted the enhancement. The record shows that Kimberly Carlton, 17 years old and living with Bowlin as his girlfriend during relevant times of his offenses, assisted Bowlin in his manufacture of methamphetamine. At Bowlin's sentencing hearing, Carlton testified that she often assisted Bowlin in his makeshift meth-lab (located in the attic of the residence they shared) by cleaning jars "whenever [Bowlin] needed them cleaned," and that, at Bowlin's request, she also frequently fetched various ingredients needed for the manufacture of methamphetamine in their home. Carlton testified that on one occasion, Bowlin allowed her to assist him in the actual manufacturing process by letting her complete (while he watched) the final stage of "smoking off" a liquid into powdered methamphetamine. Considering this testimony, which it found credible, the district court concluded: "There's no question that Kimberly Carlton was a minor at the time. This defendant used her to assist in committing the offense. Whether it's one time or ten times or a hundred times doesn't make any difference. One time's enough to do it."

Bowlin's final argument that the enhancement is improper because Carlton *offered* to assist him is without merit, for it does not negate his conscious decision to accept such assistance. The law presumes that minors need more protection than adults. Their consent to a wide range of things is thus ineffective, whether it is to the signing of a contract, or to sexual relations, or to assist-

ance with drug-manufacturing operations. The enhancement for use of a minor was thus properly applied in computing Bowlin's advisory Guidelines range.

B

Bowlin's second sentencing argument challenges the district court's determination of his relevant conduct. At issue is the court's inclusion, as relevant conduct, of the substantial amounts of methamphetamine that Stone claimed Bowlin gave her in exchange for precursor ingredients. Bowlin does not directly dispute the amounts that Stone mentioned; he argues instead that his transactions with Stone were not "part of the same course of conduct" to which he pleaded guilty, and therefore they should not have been included for purposes of his sentence.

"In assessing whether offenses are part of the same course of conduct, we look to whether there is a strong relationship between the uncharged conduct and the convicted offense, focusing on whether the government has demonstrated a significant similarity, regularity, and temporal proximity." *United States v. Ortiz*, 431 F.3d 1035, 1040 (7th Cir. 2005) (internal quotation marks omitted). In this case, the conspiracy to which Bowlin pleaded guilty lasted from December 2002 through January 2006. The transactions described by Stone started in November 2001 and went through March or April 2003. Bowlin argues that the four months or so of overlap (from December 2002 to March 2003) between his daily dealings with Stone and the charged conspiracy are insufficient to form the necessary link between the uncharged conduct and the charged conduct. He also asserts that, because Stone never men-

tioned Bowlin's alleged co-conspirators, his dealings with her were not sufficiently related to the conspiracy charge. These arguments are unavailing, for it is well established that relevant conduct can be (and often is) broader than the conduct underlying the offense of conviction. See, *e.g.*, *United States v. Payne*, 226 F.3d 792, 796 (7th Cir. 2000). The district court did not err in finding that the charged conspiracy and the deals with Stone were sufficiently similar, regular, and temporally proximate to be included in the relevant conduct calculation.

Bowlin's attempts to shed doubt on the relevant conduct finding by attacking Stone's credibility also must fail. Bowlin attempted to impeach Stone during the sentencing hearing, but the district court made an explicit finding that Stone was credible. We will reverse a district court's findings on witness credibility only if the testimony is "incredible as a matter of law," meaning that "it must have been either physically impossible for the witness to observe that which he or she claims occurred, or impossible under the laws of nature for the occurrence to have taken place at all." *Ortiz*, 431 F.3d at 1039 (internal quotation marks omitted). Given the standard of review, this line of argument provides no help to Bowlin.

## IV

Finally, we turn to Bowlin's argument that the Government is barred from alleging drug quantities in the indictment that can later serve as grounds for enhancing a defendant's sentence. This argument need not detain us long: there is no such rule. In fact, before a drug quantity may be used to affect a statutory maximum sentence, that quantity *must* be charged in the indictment and proved

to a trier of fact beyond a reasonable doubt. *Apprendi v. New Jersey*, 530 U.S. 466, 488-90 (2000); *United States v. Flagg*, 481 F.3d 946, 949-50 (7th Cir. 2007); *United States v. Macedo*, 406 F.3d 778, 786 (7th Cir. 2005); *United States v. Mietus*, 237 F.3d 866, 874 (7th Cir. 2001). When Bowlin pleaded guilty, he admitted the facts charged in the indictment. The court was therefore entitled to take that quantity into account when it established Bowlin's sentencing range.

## V

Because we conclude that Bowlin's plea was knowing, his sentence reasonable, and his challenge to drug quantities in the indictment meritless, the judgment of the district court is AFFIRMED.