NONPRECEDENTIAL DISPOSITION

To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued June 10, 2014
Decided July 2, 2014

**Before**

WILLIAM J. BAUER, *Circuit Judge*

MICHAEL S. KANNE, *Circuit Judge*

JOHN DANIEL TINDER, *Circuit Judge*

No. 13-3529

| | |
|---|---|
| UNITED STATES OF AMERICA, *Plaintiff-Appellee,* | Appeal from the United States District Court for the Central District of Illinois. |
| *v.* | No. 1:11-cr-10115 |
| WESLEY A. FORD, *Defendant-Appellant.* | Michael M. Mihm, *Judge.* |

## O R D E R

Wesley Ford appeals the denial of his motion to withdraw his plea of guilty to one count of receiving child pornography. 18 U.S.C. § 2252A(a)(2)(A). He principally argues that his first lawyer was ineffective, in particular by misleading him about the possible punishment he faced. Because the record does not support any of Ford's theories of ineffective assistance, we affirm the judgment.

In August 2011 a police detective assigned to a cybercrimes task force found that child pornography had been downloaded to an Internet Protocol address belonging to Ford's stepfather. During a search of the stepfather's residence police found a number of files containing child pornography on the stepfather's laptop computer. He told

police that Ford had used the computer while living there for part of the previous year. Ford met with police soon after and during that noncustodial interview—which was recorded on video—Ford admitted downloading the child pornography. And though Ford denied during that interview being sexually attracted to child pornography, he later told police that he likely was.

Ford, who is 30 years old, was charged in a single count with receiving a video file found on his stepfather's computer. He pleaded guilty before a magistrate judge (by consent) without a plea agreement. The magistrate judge informed him that he faced "not less than five years and up to 20 years' imprisonment." The prosecutor explained the factual basis for the charge by recounting the investigation of Ford and noting that 144 different files containing child pornography were found on the stepfather's computer, including the video alleged in the indictment. That video, the prosecutor said, had been downloaded once on June 28, 2011 (the date listed in the indictment) and again on July 7, 2011, and viewed using software on the computer as late as August 12, 2011. Ford, who was under oath, confirmed that the prosecutor's version of events, including the details about the video, was accurate. Ford also acknowledged that he was satisfied with the work of his appointed lawyer, Robert Alvarado. The magistrate judge found that Ford's guilty plea was knowing and intelligent, and recommended that the district court accept it. Ford did not object to the magistrate judge's recommendation, and the district court accepted his plea.

A presentence report was prepared, and Ford submitted no objection to the report in the eight months between his plea colloquy and sentencing date. But at sentencing he asserted that the report contained "small little details" that were mistaken and should be corrected. First, he said, the presentence report should read that he was looking for images "of himself," not "for himself." Ford did not elaborate, so the district court asked if he was denying that he searched the Internet for child pornography for himself. Ford replied, to attorney Alvarado's surprise, "I do deny that." Ford then asserted that he had never viewed the video alleged in the indictment, and had an "alibi."(Ford would later explain his belief that he could not have "received" child pornography unless he actually viewed it, even though the indictment alleges that the video was "received" on a particular day, not that it was "viewed" on any day.) The district court decided to continue Ford's sentencing and conduct an evidentiary hearing.

Attorney Alvarado then withdrew, anticipating that he might be called as a witness if Ford moved to withdraw his guilty plea. Through new counsel Ford did move to withdraw his plea. Ford asserted that he had a good-faith claim of innocence,

that Alvarado had coerced his guilty plea by predicting that the government would bring new charges should he go to trial, and that the lawyer should have investigated his case more thoroughly and moved to suppress his statements to police.

At the evidentiary hearing on Ford's motion, the district court heard from, among others, Ford and Alvarado. Ford first testified that he believed he had a valid defense to the charge of receipt. But he did not, initially, focus on the "alibi" he had mentioned earlier. Instead he focused on his "intentions" and "actions as a victim . . . trying to stop it." Once again, Ford did not elaborate. Later in his testimony he returned to his "alibi" and criticized Alvarado for not contacting a witness who, Ford implied, would confirm that he was at a picnic when the video alleged in the indictment was "viewed."

Ford also said that Alvarado had pressured him to plead guilty by warning that, if he did not, the government might bring a superseding indictment charging more than 100 counts of receipt, each carrying a 5-year statutory minimum. These representations, Ford explained, had caused him to believe that he would effectively face a life sentence if convicted at trial. Ford further asserted that Alvarado should have moved to suppress his incriminating statements as involuntary because, he now declared, he had blacked out during the interview. Ford also faulted Alvarado for not obtaining a psychological evaluation to bolster this suppression claim. Finally, an expert should have been retained, Ford insisted, to examine his stepfather's computer, as some of the files containing child pornography were corrupted and unviewable.

Under cross-examination by the government, Ford asserted that he lied during the plea colloquy when he said that he was satisfied with Alvarado's representation, that no one coerced him to plead guilty, and that the government's factual basis was true. He also made another try at explaining his "defense" to the charge: "[H]ow else am I suppose to track things down? Get an understanding on, you know, where are they at. How am I suppose to stop it. Everything why. I want to learn why these people are doing it. I want to know how I can stop it." The government pressed for further clarification, and Ford, after some evasive answers, finally declared that he had, for 14 years, attempted to act as a vigilante, tracking those who trafficked in child pornography on the Internet, and that he had, on an unspecified occasion, shared his findings with unnamed governors and mayors.

The district court then questioned Ford, asking first about his purported defense. Ford maintained that all he had done was "what [he] could do to help out," but

admitted that he downloaded child pornography on the date listed in the indictment. Ford further emphasized his belief that an expert could have determined whether a particular unspecified file was corrupted and could not be viewed, and informed the court that his "alibi" witness also could testify to the sexual abuse he suffered at the hands of his grandfather early in life.

Alvarado testified under instructions from the district court to discuss matters that otherwise would be privileged. He said that he was aware of Ford's proposed defenses but had told him that none was a defense to receiving child pornography. His "alibi" witness, Alvarado had told Ford, could not negate the fact that he admitted downloading child pornography. Regarding a computer expert, Alvarado said he did not feel, given the evidence against Ford, that he could justify hiring an expert witness. About Ford's incriminating statements Alvarado said he had watched the video of the interview and seen nothing suggesting that Ford had blacked out, so he concluded that an involuntariness claim would be frivolous. Alvarado also denied ever telling Ford that he faced a possible life sentence, but did acknowledge warning Ford that he faced the possibility of additional charges should he insist on a trial. Even so, Alvarado continued, he estimated that Ford's guidelines imprisonment range would be between five and ten years.

In denying Ford's motion, the district court found nothing wrong with Alvarado's assessment of Ford's proposed defenses, or with the lawyer's prediction that the government might add more charges should Ford go to trial. Regarding Alvarado's "prediction" of a life sentence, the judge recalled that on a number of occasions he had seen the government add more charges before trial, and observed that Alvarado would have opened himself up to a claim of ineffective assistance had he not warned Ford that he might face additional charges and receive consecutive sentences. The court also reasoned that Alvarado's decisions not to file a motion to suppress or retain an expert witness were not cause to denigrate Alvarado's effectiveness as an advocate. The court ultimately concluded that Alvarado's performance did not give Ford a fair and just reason to withdraw his guilty plea.

When Ford's sentencing hearing resumed, the district court calculated a total offense level of 31. Combined with his criminal-history category of II, Ford's guidelines imprisonment range was 121 to 151 months. The district court sentenced him to 81 months.

On appeal Ford first argues that he should have been permitted to withdraw his guilty plea because, he says, the magistrate judge did not tell him that he faced a "mandatory minimum sentence." This contention was not made in the district court, so we review for plain error. *See United States v. Salgado-Ocampo*, 159 F.3d 322, 325–26 (7th Cir. 1998). But the standard of review is unimportant because Ford's contention is factually untrue. Ford concedes, as he must, that the magistrate judge told him that he faced a term of imprisonment of "not less than five years." Ford faults the magistrate judge for not using the words "mandatory minimum," but the language used by the court comes directly from the statute. *See* 18 U.S.C. § 2252A(b)(1) (any person convicted of receiving child pornography "shall be fined under this title and imprisoned *not less than 5 years*" (emphasis added)).

Ford's principal argument—that deficient performance by Alvarado provided him with a fair and just reason to withdraw his plea—is similarly meritless. Ford sees five shortcomings in Alvarado's representation: (1) the lawyer made a misleading prediction about his sentencing exposure should he go to trial, (2) he did not try to suppress Ford's confession, (3) he did not request a psychological evaluation to support a hypothetical suppression motion, (4) he never retained an expert to determine if the stepfather's computer was infected or files were corrupted, and (5) he never contacted Ford's alibi witness. We review for an abuse of discretion, *see United States v. Mays*, 593 F.3d 603, 607 (7th Cir. 2010); *United States v. Bowlin*, 534 F.3d 654, 659 (7th Cir. 2008), and none of Ford's arguments demonstrates that the district court abused its discretion.

Alvarado indeed told Ford that the government might add charges if he went to trial, and that more charges could lead to a longer sentence. But Alvarado also testified, without contradiction, that he predicted the possibility of a particularly long sentence to be remote, and told Ford to anticipate a sentence between 5 and 10 years. Ford argues that the district court wrongly concluded that advice was sound. But adding charges as a tactic is both common and permissible, *Missouri v. Frye*, 132 S. Ct. 1399, 1406–08 (2012); *Brady v. United States*, 397 U.S. 742, 752–53 (1970), and professional norms required Alvarado to discuss with Ford the potential consequences of going to trial, *see, e.g.*, NAT'L LEGAL AID AND DEFENDER ASS'N, Performance Guidelines for Criminal Defense Representation § 6.2, *available at* www.nlada.org/Defender/Defender_Standards/Performance_Guidelines (accessed June 24, 2014). The district court's conclusion about the soundness of Alvarado's advice was not error.

Ford's remaining theories of deficient performance are frivolous. Regarding suppression Ford submitted no evidence to contradict Alvarado's testimony that the

video of his confession does not show him blacking out. Nor did Ford make any attempt to establish that police conduct during the interview was coercive, as would be required to suppress his incriminating statements. *See Colorado v. Connelly*, 479 U.S. 157, 164–65 (1986); *United States v. Stadfeld*, 689 F.3d 705, 709–10 (7th Cir. 2012). Because Ford only vaguely asserted that certain files might have been corrupted, the district court had no reason to think that Ford's proposed computer expert might have changed the course of the proceedings. And Ford's proposed "alibi" did not give the district court reason to permit him to withdraw his plea because it was not an alibi to the commission of the crime: Ford had violated § 2252A(a)(2) when he knowingly downloaded child pornography, even before he viewed it. *See United States v. Pruitt*, 638 F.3d 763, 766 (11th Cir. 2011) ("A person 'knowingly receives' child pornography under 18 U.S.C. § 2252A(a)(2) when he intentionally views, acquires, *or* accepts child pornography on a computer from an outside source." (emphasis added)); *United States v. Miller*, 527 F.3d 54, 64–69 (3d Cir. 2008) (upholding conviction for receipt of child pornography even though defendant denied ever viewing child pornography found in his digital storage); *United States v. Osborne*, 935 F.2d 32, 34 & n.2 (4th Cir. 1991) (affirming conviction for receipt because defendant had ordered child pornography shipped to his residence, even though he never had chance to view material).

AFFIRMED.