SCHROEDER, Circuit Judge:
The plaintiffs, predominately black and hispanic residents of the City of Lynwood, California, brought this section 1983 class action alleging that deputy sheriffs at the Lynwood station of the Los Angeles County Sheriff’s Department were mistreating minority citizens. The complaint, filed against the County of Los Angeles, the *506 City of Lynwood, the Los Angeles County Sheriffs Department, supervisory personnel within the Sheriffs Department, and individual Sheriffs deputies, includes allegations of unlawful detentions and searches, beatings, shootings, terrorist activities, and destruction of property. Specifically, the plaintiffs charge that deputy sheriffs in Lynwood use excessive force in detaining minority citizens and employ unlawful procedures in searching residences occupied by minorities. This appeal, filed by the defendants, challenges the preliminary injunction issued by the district court in an effort to bring to an end the incidents of police misconduct.
The injunction issued by the district court ordered the entire Los Angeles Sheriffs Department to do the following:
1. Follow the Department’s own stated policies and guidelines regarding the use of force and procedures for conducting searches; and
2. Submit to the Court in camera and under seal, copies of reports alleging the use of excessive force that are in the possession of the Department on the first of every month.
Pursuant to the defendants’ request for emergency appellate relief, this court stayed the injunction pending appeal.
We reverse the district court’s injunction because its broad geographic and substantive scope is not supported by the record before us, and because the district court entered the injunction and subsequent findings of fact without resolving some serious factual disputes concerning the specific incidents of misconduct alleged. We hold that the plaintiffs do have standing to pursue this action and we remand for further proceedings.

Proceedings Below

The misconduct as described by the plaintiffs is both malicious and pervasive. Affidavits collected during the early stages of litigation charge that black and hispanic men have been repeatedly arrested without cause and severely beaten at the Lynwood station, the County jail, and the “Operations Safe Streets” trailer. Guns, flashlights, fists, clubs, boots, a brick wall, and an electric Taser gun were just a few of the weapons allegedly used to injure individual plaintiffs. Many of the victims required medical treatment after being “apprehended” by Lynwood deputies, and some were hospitalized. Firearms were purportedly used to terrorize suspects. Affidavits recount instances where deputies placed the muzzle of a firearm in a suspect’s ear, mouth or behind his head, and threatened to pull the trigger, or actually fired the gun without discharging a bullet. The plaintiffs also cite ten incidents where deputies allegedly illegally forced entry into residences, searched and ransacked the premises, and then left without arresting anyone. Many of the incidents described by the plaintiffs involved racial slurs and obscene language directed at the victim of the beating or search.
The plaintiffs filed volumes of declarations and affidavits in support of their allegations and defendants responded in kind. There was no evidentiary hearing. The record is described in appellees’ brief as follows:
In support of their preliminary injunction motion, plaintiffs filed over 200 pages of documentary evidence, including 58 declarations detailing the deputies’ misconduct and 33 color photographs of injuries and property damage suffered by the victims. Plaintiffs also relied on documents they had previously filed in opposition to defendants’ pending motions, including certified copies of the declarations of 11 deputies and news reports concerning the existence and activities of the “Vikings,” a white-supremacist gang of deputies operating within the Lynwood substation. Defendants responded with more than 1,200 pages of declarations and other documents in an effort to refute plaintiffs’ claims. In reply, plaintiffs filed 25 additional declarations and other documents.
The plaintiffs sought from the district court a preliminary injunction to prevent further violent acts and unlawful searches. Before argument, the plaintiffs presented the court with a proposed order which anticipated enjoining only department personnel acting within “the jurisdiction of the *507 Lynwood station.” The defendants represented to the court, however, that the Department’s deputy assignment policy would make such an order impossible and, if issued, would “interject confusion into law enforcement operations.” In response, the district court granted the plaintiffs’ motion for a preliminary injunction, but struck the geographic limitation contained in the proposed order. The preliminary injunction was entered on September 23, 1991.
Although two weeks later the district court filed written findings of fact and conclusions of law in support of the preliminary injunction order, they were entered without an evidentiary hearing and did not resolve any specific conflicting factual allegations.[1] The findings of fact and conclusions of law are reprinted in their entirety in the Appendix.

Standing

As a threshold matter, appellants challenge plaintiffs’ standing to pursue this action in which they seek to represent a class of residents and visitors to the Lyn-wood area who have been or may be mistreated by Lynwood Sheriff’s deputies on account of their race, color, national origin, age, or economic class. Appellants rely principally on City of Los Angeles v. Lyons, 461 U.S. 95, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983).
The Article III “case or controversy” requirement restricts federal jurisdiction to those cases where the plaintiffs can maintain that their injury or the threat of future injury by the defendants is “both ‘real and immediate,’ not ‘conjectural or hypothetical.’ ” Lyons, 461 U.S. at 102, 103 S.Ct. at 1665 (citations omitted). Plaintiffs allege that they are suffering ongoing irreparable injury as a result of the Lynwood deputies’ terrorist-type tactics. Further, they contend that there is a direct link between the department policy makers and the injuries suffered by the plaintiffs.
The majority of the incidents alleged by the plaintiffs are said to have occurred within a six by seven block area within the jurisdiction of the Lynwood station. Seventy-five plaintiffs allege that they were victims of police misconduct, many within this small section of the City. A number of the class members are alleged to have been repeatedly subject to police brutality and harassment. This is significant as the “possibility of recurring injury ceases to be speculative when actual repeated incidents are documented.” Nicacio v. United States I.N.S., 797 F.2d 700, 702 (9th Cir.1985).
Also significant is the fact that members of the plaintiff class have been subjected to retaliatory attacks in response to the filing of this action. In O’Shea v. Littleton, the Supreme Court dismissed a complaint alleging discrimination in sentencing, holding that “[pjast exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief ... if unaccompanied by any continuing, present adverse affects.” 414 U.S. 488, 495-96, 94 S.Ct. 669, 676, 38 L.Ed.2d 674 (1974). Repeated instances of violence and retaliatory confrontations are “continuing present adverse affects” and cause the threatened injury to be “sufficiently real and immediate to show an existing controversy.” Id. at 496, 94 S.Ct. at 676.
Lyons does counsel caution with respect to federal intervention in state law enforcement matters. See LaDuke v. Nelson, 762 F.2d 1318, 1323 (9th Cir.1985) (citing Lyons, 461 U.S. at 112, 103 S.Ct. at 1670). Lyons too involved a federal court's order enjoining allegedly unconstitutional conduct of city law enforcement officials. The Court explained that to prevail on the standing question, Lyons needed to “credibly allege that he faced a realistic threat from the future application of the City’s policy.” Id. at 107 n. 7, 103 S.Ct. at 1667 n. 7. The Court held that Lyons, one citizen *508 in a very large city, could not credibly allege that he would again be detained by the police and again be the victim of a police chokehold. In contrast, the record before this court indicates that numerous instances of police misconduct have occurred in a small six by seven block area, some minority residents of the area have been, mistreated by deputies more than once, and many victims purportedly did nothing to warrant detention or apprehension prior to the mistreatment. Moreover, plaintiffs have alleged that the misconduct is purposefully aimed at minorities and that such misconduct was condoned and tacitly authorized by department policy makers. We conclude that the plaintiffs have alleged a “real and immediate threat of injury” and consequently have presented a jus-ticiable controversy. Lyons, 461 U.S. at 103, 103 S.Ct. at 1666.

Merits of the Injunction

The primary question raised by this appeal is whether the equitable relief granted by the district court was permissible given the evidence offered by the parties. For two reasons we conclude that the injunction, as issued, must be vacated. First, the district court’s finding that the abuses in question were the product of departmental policy is not supported by this record containing conflicting declarations unresolved by an evidentiary hearing or specific factual findings. Second, the injunction was too sweeping. Our holding, however, is limited to the record before us and does not preclude the grant of narrower preliminary or permanent injunctive relief on the basis of a more fully developed record.
I. Showing departmental policy: the need to resolve factual disputes.
“Our review of a motion for preliminary injunction is ‘very limited.’ ” International Molders’ & Allied Workers’ Local Union No. 164 v. Nelson, 799 F.2d 547, 550 (9th Cir.1986). However, we may overturn a preliminary injunction if the record does not support the district court’s conclusion that the plaintiff is likely to succeed on the merits. Id. at 551; see also Caribbean Marine Services Co. v. Baldrige, 844 F.2d 668, 674-75 (9th Cir.1988). When the district court imposes a preliminary injunction on a state agency, a strong factual record is necessary; our review of the injunction must be more rigorous when we review an injunction against a state as opposed to a federal agency, since the Supreme Court requires a showing of an intentional and pervasive pattern of misconduct in order to enjoin a state agency. Rizzo v. Goode, 423 U.S. 362, 375, 96 S.Ct. 598, 606, 46 L.Ed.2d 561 (1976).
A state law enforcement agency may be enjoined from committing constitutional violations where there is- proof that officers within the agency have engaged in a persistent pattern of misconduct. Allee v. Medrano, 416 U.S. 802, 815-16, 94 S.Ct. 2191, 2200-01, 40 L.Ed.2d 566 (1974); Hague v. Committee for Industrial Organization, 307 U.S. 496, 517, 59 S.Ct. 954, 964, 83 L.Ed. 1423 (1939). In Allee, the Supreme Court upheld a permanent injunction restraining further unconstitutional conduct by various Texas state law enforcement officials who had unlawfully threatened, detained, confined, and physically assaulted union leaders engaged in organizing efforts. Id. 416 U.S. at 804-05, 815, 94 S.Ct. at 2195, 2200. In affirming the district court's injunction, the Supreme Court found that the constitutional violations “were not a series of isolated incidents but a prevailing pattern” of police misconduct. Id. at 809, 94 S.Ct. at 2197.
Two years after Allee, the Supreme Court again had reason to examine a federal court’s equitable power to enjoin a state law enforcement agency. In Rizzo v. Goode, 423 U.S. 362, 96 S.Ct. 598, 46 L.Ed.2d 561 (1976), the Supreme Court reaffirmed the factual showing required under Allee — a pervasive pattern of police misconduct — but further defined that standard to include only that conduct “which flowed from an intentional, concerted, and indeed conspiratorial effort to deprive [the victims] of their [constitutional] rights.” Id. 423 U.S. at 375, 96 S.Ct. at 606.
In Rizzo, as in this case, equitable relief was granted by the district court in an effort to halt instances of police brutality directed at minority citizens. The injunction issued by the district court ordered police officials to submit for approval a comprehensive program for dealing with *509 civilian complaints alleging police misconduct. Id. at 365, 96 S.Ct. at 601-02. The Supreme Court held that nineteen constitutional violations in a year’s time, by only a small percentage of the police, did not warrant injunctive relief. Id. at 367-369, 375, 96 S.Ct. at 602-03, 606. In articulating how the plaintiffs had failed in their proof, the Court explained that to succeed the plaintiffs needed to show that the police misconduct flowed from a policy, plan, or a pervasive pattern. Further, this pattern, plan or policy had to be causally linked to the defendants named in the action. The Court placed considerable emphasis on the fact that the officers who actually participated in the alleged incidents of misconduct were not named as defendants in the action. Id. at 375, 96 S.Ct. at 606.
Unlike Rizzo, the plaintiffs in this case did name as defendants twenty-one individual sheriff’s deputies who were purportedly responsible for the misconduct. Supervisory personnel were also named defendants. The plaintiffs argue that the challenged conduct is causally linked to the Los Angeles Sheriff’s Department policies, citing the large number of incidents, the racial animus motivating the violence, the Department’s vigorous campaign against minority-race gangs, and the purported existence of a gang of white Sheriff deputies known as the “Vikings.” Specific findings of a persistent pattern of misconduct supported by a fully defined record can support broad injunctive relief. See, e.g., Orantes-Hernandez v. Thornburgh, 919 F.2d 549 (9th Cir.1990). But there are no similar specific findings here to support the district court’s general conclusion that there is “a direct link between departmental policy makers, who tacitly authorize deputies’ unconstitutional behavior, and the injuries suffered by the defendant.”
The parties to this action submitted diametrically opposing declarations and counter-declarations disputing the frequency and seriousness of police misconduct. Before issuing its preliminary injunction, the district court did not conduct evidentiary proceedings to resolve any of the disputed matters. We are mindful that plaintiffs’ eventual burden in obtaining a permanent injunction against a state law enforcement agency is to establish more than repeated incidents of misconduct. See Rizzo, 423 U.S. at 374-375, 96 S.Ct. at 605-606. The record in this case does not yet contain a sufficient basis on which to evaluate the likelihood of the plaintiffs’ succeeding on the merits in establishing, not merely misconduct, but a pervasive pattern of misconduct reflecting departmental policy.
II. The breadth of the injunction.
The district court’s order directed all Los Angeles County Sheriff’s Department employees to follow “the Department’s own stated policies and guidelines regarding the use of force and procedures for conducting searches.” The plaintiffs presented no evidence supporting application of the injunction in areas other than the jurisdiction of the Lynwood station. The work assignment policy of the Los Angeles County Sheriff’s Department, upon which defendants based their objection to any injunction being entered, does not justify application of this injunction to all Sheriff’s Department employees working in the Los Angeles metropolitan area. The injunction plaintiffs initially proposed would have bound only Department personnel acting “within the jurisdiction of the Lynwood station.” Neither the record nor the plaintiffs’ allegations support an injunction against the entire Sheriff’s Department without geographic circumscription.
The district court’s injunction also directs compliance, under penalty of contempt, with all department policies and guidelines for conducting searches and for the use of force. It does not define what the policies are, or how they can be identified. The order thus fails to specify the act or acts sought to be restrained as required by Fed.R.Civ.P. 65(d).
Plaintiffs incorrectly rely on Davis v. City and County of San Francisco, 890 F.2d 1438 (9th Cir.1989) as authority for their position that the injunction can incorporate departmental policies without specific reference. That case does not permit the wholesale incorporation of Department policies and guidelines as an injunctive mandate. The injunction issued in that case incorporated by reference portions of a sin *510 gle general internal order issued by the San Francisco Fire Department requiring that station houses be inspected for racially inflammatory or sexually inflammatory material. The injunction, by way of an incorporated order, specified the act or acts sought to be restrained. It did not incorporate by reference, all SFFD policies and guidelines.
Finally, Paragraph two of the district court’s injunction directs the Los Angeles County Sheriff’s Department to “[sjubmit to the Court, in camera and under seal, copies of reports alleging the use of excessive force that are in the possession of the Department on the first of every month.” The district court is authorized to direct the submission of such reports to ensure compliance with an injunction. Provided it is not “overly burdensome,” such oversight can be a proper exercise of the district court’s discretion “because it helps ensure compliance with the injunction.” Gluth v. Kangas, 951 F.2d 1504, 1511 (9th Cir.1991) (upholding injunction requiring state prison authorities to submit to the district court duplicate reports of denials of prisoner supply requests). Requiring submission of incident reports in camera and under seal is not in and of itself an unduly burdensome way for the district court to monitor the defendants’ compliance with an otherwise valid order enjoining future unlawful conduct. See Kerr v. United States Dist. Ct. for N.D. Cal., 426 U.S. 394, 405-06, 96 S.Ct. 2119, 2125-26, 48 L.Ed.2d 725 (1976); Guerra v. Board of Trustees of Cal. State Universities, 567 F.2d 352, 355 (9th Cir. 1977) (in camera review, deletion of names, and strict control over copies are a few of the “readply] available] alternatives to protect confidentiality”). In this case, however, this portion of the injunction does not yet further compliance with an otherwise valid order and, insofar as it applies to all incidents reported to the Los Angeles County Sheriff’s Department, is even broader than the scope of plaintiffs’ complaint. The plaintiffs have alleged deputy misconduct only within the jurisdiction of the Lynwood station. Any reporting provision entered by the district court should be tailored to fit within the scope of the litigation and must further an appropriate injunctive remedy.
Conclusion
The preliminary injunction entered by the district court is REVERSED AND THE MATTER REMANDED FOR FURTHER PROCEEDINGS.
APPENDIX
The court’s findings of fact and conclusions of law provide as follows:
FINDINGS OF FACT
1. Plaintiffs filed this civil rights action suit under 42 U.S.C. §§ 1983 and 1985 to stop, what they perceived to be, the systematic and unjustified shootings, killings, beatings, terrorism, and destruction of property caused by Los Angeles County deputy sheriffs at the Lynwood sub-station.
2. A motion to certify the class has not yet been filed.
3. Since the date this case was filed, there have been many confrontations between deputy sheriffs and plaintiffs, in an apparent attempt by the deputies to convince plaintiffs to dismiss this action.
4. Several plaintiffs were charged with crimes after they were allegedly brutalized by deputies. These individuals were charged pursuant to an unwritten Sheriffs Department policy of charging a person injured in the course of a routine stop. Because of the unreasonable force used in effectuating their arrests, many of these victims had their criminal charges dropped at arraignment.
5. Witnesses who attempted to file misconduct reports regarding some of the brutality incidents were discouraged from doing so by deputies and their superiors.
6. Most of the deputies who work in the Lynwood area are permanently assigned to the Lynwood sub-station; however, a significant number of officers, such as reserve officers and members of department-wide bureaus, are not permanently assigned to the Lynwood sub-sta *511 tion, but occasionally work in the Lyn-wood area.
7. The actions of many deputies working in the Lynwood sub-station are motivated by racial hostility; these deputies regularly disregard the civil rights of individuals they have sworn to protect. Many of the incidents which brought about this motion involved a group of Lynwood area deputies who are members of a neo-nazi, white supremacist gang — the Vikings — which exists with the knowledge of departmental policy makers.
8. Deputies, who previously worked in the Lynwood sub-station, acknowledge that during the period they were assigned to Lynwood, it was clear that many of the deputies and sergeants in Lynwood were out to intimidate and ridicule Blacks and Hispanics.
9. There is a direct link between departmental policy makers, who tacitly authorize deputies’ unconstitutional behavior, and the injuries suffered by the plaintiffs.
10. As a result of the terrorist-type tactics of deputies working in Lynwood, and the policy makers’ tolerance of such tactics, plaintiffs are being irreparably injured — both physically and mentally— and their civil rights are being violated.
11. The evidence presented by the plaintiffs is more credible than that presented by the defendants.
12. To the extent that any of these findings of fact are deemed to be conclusions of law, they are incorporated as conclusions of law.
CONCLUSIONS OF LAW
1. Plaintiffs have standing to seek in-junctive relief because:
A. They requested damages as well as injunctive relief (see Giles v. Ackerman, 746 F.2d 614 (9th Cir.1984), cert. denied, 471 U.S. 1053 (1985));
B. They have alleged a persistent pattern of police misconduct in the Lynwood area from which a future threat can be inferred (see Smith v. City of Fontana, 818 F.2d 1411 (9th Cir.1987)); and
C. Their claims for injunctive relief and damages are based on the same operative facts (see Smith, 818 F.2d at 1423).
2. A preliminary injunction should be issued upon a showing of probable success on the merits and the possibility of irreparable harm, or the existence of serious questions on the merits and that the balance of hardships tips in the moving party’s favor. Vision Sports, Inc. v. Melville Corp., 888 F.2d 609, 612 (9th Cir.1989).
3. When the public interest is involved, that factor must be treated as “one of the traditional'equitable criteria which a court should consider in granting injunctive relief.” Chalk v. United States, 840 F.2d 701, 711 (9th Cir.1988).
4. Plaintiffs have established their probable success on the merits, based on this Court’s finding that the plaintiffs’ evidence is more credible than that of the defendants.
5. Plaintiffs have also established irreparable harm, based on this Court’s finding that the deputies’ actions have resulted in irreparable physical and emotional injuries to plaintiffs and the violation of plaintiffs’ civil rights.
6. This Court has balanced the equities and found that the irreparable injury to plaintiffs that would result from the denial of a preliminary injunction far outweighs any possible injury that such relief could cause defendants.
7. The issuance of a preliminary injunction will serve the public interest in that it will prevent; or at least minimize the physical, emotional, and psychological harm being suffered by plaintiffs and the Lynwood community at the hands of Lynwood area deputies.
8. To the extent that any of these conclusions of law are deemed findings of fact, they are incorporated as findings of fact.

. Appellants incorrectly contend that the notice of appeal, filed September 24, 1991, divested the district court of jurisdiction to file the written findings and conclusions. The findings and conclusions were entered in furtherance of the injunction order and they further our review of that order. See Hybritech Inc. v. Abbott Laboratories, 849 F.2d 1446, 1450 (Fed.Cir.1988). Appellants have also asked to supplement the record with documents related to the subsequent class certification. Since that certification order was entered independently from the preliminary injunction, we deny the motion.