**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Daniel HASLAM, Defendant–Appellant.**

No. 14-2641

United States Court of Appeals,
Seventh Circuit.

Argued September 21, 2015

Decided August 17, 2016

Nathaniel Whalen, Attorney, Office of the United States Attorney, Hammond, IN, for Plaintiff–Appellee.

Jeffrey Michael Brandt, Matthew M. Robinson, Attorneys, Robinson & Brandt, Covington, KY, for Defendant–Appellant.

Before WOOD, Chief Judge, POSNER and SYKES, Circuit Judges.

SYKES, Circuit Judge.

Daniel Haslam pleaded guilty under a written plea agreement to manufacturing methamphetamine, possessing unregistered silencers, and possessing a firearm in connection with a drug offense. His presentence report included as relevant conduct an incident in which Haslam held a woman hostage in his apartment on the mistaken belief that she was an undercov-

er police officer. Haslam thinks the government breached the plea agreement by giving this hostage-taking information to the probation office and the court; he moved to withdraw his pleas. The district judge denied the motion and imposed a sentence of 181 months in prison.

Haslam appealed, challenging the denial of his plea-withdrawal motion. We affirm. Haslam's plea agreement did not limit the information the government could give the court about the offense or his background. To the contrary, the agreement explicitly reserved the government's right to fully inform the court, so there was no breach. And the judge properly rejected Haslam's alternative claim that he pleaded guilty unknowingly based on a misunderstanding that the plea agreement contained such a limitation.

## I. Background

In August 2012 Haslam manufactured, used, and trafficked methamphetamine in his apartment in Converse, Indiana. He also manufactured firearm silencers and possessed numerous illegally modified firearms in furtherance of his drug trafficking.

On August 25, 2012, Haslam invited Laci Sample to his apartment. The two had been dating for a few weeks, and they both used methamphetamine while she was there that day. Things turned violent when Sample received a text message saying she had to "get ready for training day tomorrow." Haslam mistakenly interpreted this message as a sign that she was an undercover police officer. He pushed her down on the bed and began beating her, inflicting injuries to her head, face, arms, legs, and torso. Over the next day and a half, Haslam prevented Sample from leaving his apartment, threatening her with a gun and more beatings. He released her only after she said she had to pick up her daughter from the child's father and people would start looking for her if she didn't show up.

On August 30 police performed a traffic stop on a vehicle Haslam was riding in and found him in possession of a loaded pistol modified for a silencer. That same day the police executed a search warrant on Haslam's apartment and found several firearms, silencers in various stages of production, ammunition, and methamphetamine. A grand jury indicted Haslam on four counts: (1) possessing an unregistered firearm or silencer, 26 U.S.C. §§ 5845(a), 5861(d), and 5871; (2) manufacturing methamphetamine, 21 U.S.C. § 841(a)(1); (3) possessing a firearm equipped with a silencer in furtherance of drug trafficking, 18 U.S.C. § 924(c); and (4) possessing a firearm while using a controlled substance, id. § 922(g)(3). Count 3 carried a mandatory 30-year minimum sentence.

Plea negotiations followed. As relevant here, the prosecutor sent Haslam's counsel a proposed plea agreement that required Haslam to admit to the beating and confinement of Laci Sample as relevant conduct. Haslam would not admit to this conduct and wanted this section of the agreement deleted. The government complied. Haslam eventually agreed to plead guilty to counts 1, 2, and 4 in exchange for the dismissal of count 3. At Haslam's request the factual-basis section of the final version of the plea agreement did not contain the Sample incident.

Three provisions of the plea agreement are particularly relevant here:

9. (d) ... *I expressly waive my right to appeal my conviction, my sentence and any restitution order* to any Court on any ground, including any claim of ineffective assistance of counsel.

. . .

(g) The defendant fully understands that *the United States of America has reserved the right to tell the Sentencing Court the good things about him, and the bad things about him, and has re-*

*served the right to fully inform the Court of the nature and extent of his offense(s);*

...

(*l*) Other than what is contained in this plea agreement, no predictions, promises, or representations have been made to me as to the specific sentence that will be imposed or any other matter.

(Emphases added.)

A magistrate judge presiding at the change-of-plea hearing placed Haslam under oath and confirmed on the record that he had read the plea agreement, understood it, and discussed it with his attorney. The magistrate judge also specifically asked Haslam if the government had made any promises that were not contained in the plea agreement. Haslam responded, "no." The magistrate judge found that Haslam's guilty pleas were knowing and voluntary and recommended that the district court accept them.

Immediately after the change-of-plea hearing, the government sent a memorandum to the probation office and Haslam's counsel detailing Haslam's offense conduct, including a lengthy description of the Sample incident. About six weeks later Haslam wrote a letter to his attorney accusing him of failing to obtain "vital" defense evidence and complaining that "[a]fter speaking with the probation department[,] I have found that there are many details you failed to inform me of which definitely would have influenced my decision on signing this plea." Nonetheless, Haslam said, "what's done is done." Haslam exhorted his attorney to obtain additional evidence to discredit Sample.

Ten days later the probation office filed its draft presentence report recommending several upward adjustments to the offense level under the Sentencing Guidelines based on Haslam's battery and confinement of Sample. Haslam's attorney objected to these adjustments, contesting the facts surrounding the Sample incident. The adjustments remained in the final presentence report. Haslam's attorney again objected, contesting the facts and questioning the relevance of the Sample incident to the drug and weapons offenses.

At sentencing the district judge adopted the magistrate judge's findings and recommendations, accepted Haslam's guilty pleas, and found him guilty. Before the government began its evidentiary presentation, Haslam's attorney lodged this objection to any testimony from Laci Sample:

The plea agreement that was entered was based on what my client admitted that he did, and he's taken full responsibility for the things that he did. When the very first plea offer that was offered to us had statements relating to crimes of violence and different things of that nature, we were ready to go to trial on those if ... those were not taken out. ... [W]e ultimately got a plea that was entered that takes out any mention of violence or any restraint or any battery on this person. If, in fact, those had not been taken out, we would not have entered a plea and would have gone to trial.

The circumstances here is that what my client has pled to, there's nothing ... related to any crime of violence as related to the alleged conduct against Ms. Sample. ... [W]e don't see that that evidence is relevant to the crimes that he admitted to committing and, therefore, we would ask that the Court would find that those are not relevant.

The judge allowed Sample to testify and then called a recess, continuing the sentencing to another day.

When the proceedings resumed, Haslam insisted that his attorney read the following question to the court:

Why are we having a hearing on an issue that was completely removed from my plea in order for me to accept it? It was agreed that [the prosecutor would] remove everything pertaining to Laci Sample from my plea, never to be heard of again, so wouldn't throwing her back into the equation be a breach of his own plea agreement offer?

The judge allowed the prosecutor to complete his evidentiary presentation and ordered briefing on whether the government had breached the plea agreement.

In his brief Haslam's counsel asked the court to set aside his client's guilty pleas because the government had breached the plea agreement by presenting evidence about the Sample incident. Alternatively, counsel argued that Haslam had pleaded guilty based on a misunderstanding that the Sample incident was completely off the table. Haslam sent his own letter to the judge claiming that his attorney had convinced him that "Laci Sample and thirty to life were removed and never to be heard of ever again!"

At the next hearing, Haslam's attorney told the judge that he was "livid" when he saw the government's sentencing memorandum and "could not believe that all of a sudden what we had bargained for was now taken out." He accused the government of breaching an implied promise to not introduce this evidence. At the very least, counsel argued, Haslam did not truly understand the plea agreement and should be allowed to withdraw his guilty pleas.

The judge rejected these arguments and denied the plea-withdrawal motion. The judge later made factual findings to support the adjustments relating to the Sample incident. After additional proceedings, the judge imposed a sentence of 181 months.

## II. Discussion

Haslam's appeal challenges only the denial of his motion to withdraw his guilty pleas. Because he filed his plea-withdrawal motion after the court accepted the pleas, it was his burden to show "a fair and just reason for requesting the withdrawal." FED. R. CRIM. P. 11(d)(2)(B). A material breach of a plea agreement is a "fair and just reason" for withdrawing a guilty plea. *See United States v. O'Doherty*, 643 F.3d 209, 217 (7th Cir. 2011) ("The remedy for breach of a plea agreement is specific performance and a remand for re-sentencing before a different judge, or a remand to permit the defendant to withdraw his plea."). And of course a guilty plea is valid only if it is entered knowingly and voluntarily. *Bradshaw v. Stumpf*, 545 U.S. 175, 183, 125 S.Ct. 2398, 162 L.Ed.2d 143 (2005) ("A guilty plea operates as a waiver of important rights, and is valid only if done voluntarily, knowingly, and intelligently . . . ."). We review the denial of a plea-withdrawal motion for abuse of discretion; the district court's factual findings "as to whether the defendant has presented a 'fair and just reason' are reviewed for clear error." *United States v. Fard*, 775 F.3d 939, 943 (7th Cir. 2015).

Before proceeding, we note that Haslam's appeal waiver doesn't affect our review, at least in the circumstances of this case. An appeal waiver is valid and enforceable if its "terms are express and unambiguous[ ] and the record shows that the defendant knowingly and voluntarily entered into the [plea] agreement." *United States v. Sakellarion*, 649 F.3d 634, 639 (7th Cir. 2011) (quotation marks omitted). An appeal waiver stands or falls with the plea agreement itself, so if the agreement is valid and enforceable, the waiver is too. *Id.*

The government agrees that the appeal waiver does not block our review of Has-

lam's claim that the plea agreement is invalid because he signed it based on a misunderstanding about its terms. *See Hurlow v. United States*, 726 F.3d 958, 965 (7th Cir. 2013). But the government *does* invoke the waiver as a bar to Haslam's claim of breach. This latter argument rests on *United States v. Whitlow*, 287 F.3d 638 (7th Cir. 2002), and *United States v. Hare*, 269 F.3d 859 (7th Cir. 2001). Both cases suggest that a defendant's appeal waiver prevents us from considering his contention that the government breached the plea agreement. *Whitlow*, 287 F.3d at 640 (citing *Hare*, 269 F.3d at 860–61). On the other hand, we have routinely considered a defendant's claim of breach, appeal waivers notwithstanding. *See, e.g., United States v. Cieslowski*, 410 F.3d 353, 361–62 (7th Cir. 2005); *United States v. Matchopatow*, 259 F.3d 847, 853 (7th Cir. 2001) ("We hold that the government did not breach the terms of the plea agreement and that Matchopatow's waiver of his right to appeal is therefore binding and valid."); *United States v. Feichtinger*, 105 F.3d 1188, 1190–91 (7th Cir. 1997).

We don't need to resolve this apparent tension in our caselaw today. As we've noted, the government does not contest our authority to address Haslam's claim that his plea agreement is invalid because it was not knowingly made. That question is tightly bound with the question of breach. Here, both questions turn on whether the agreement included a promise that the government would not inform the court of the Sample incident at sentencing. If there was no such promise, as the government contends, then the agreement is enforceable and it also necessarily follows that the government did not commit a breach.

▮▮▮ We'll begin with the question of breach. Plea agreements are interpreted "according to principles of contract law." *United States v. Hernandez*, 544 F.3d 743,

750–51 (7th Cir. 2008). Haslam's claim runs into trouble right away: Nothing in the plea agreement expressly obligated the government to refrain from introducing evidence of the Sample incident for sentencing purposes. Quite the opposite: The agreement explicitly reserved the government's "right to tell the Sentencing Court the good things about [Haslam], and the bad things about [Haslam], and ... the right to fully inform the Court of the nature and extent of his offense."

Haslam is left to argue, in effect, that the government was *implicitly prohibited* from doing something that the agreement *explicitly permitted* it to do. That makes little sense. Moreover, the agreement explicitly states that the government made "no predictions, promises, or representations" outside the four corners of the document. The text of the plea agreement conclusively defeats Haslam's claim of breach.

We confronted a similar claim in *United States v. Schilling*, 142 F.3d 388 (7th Cir. 1998). The defendants in that case admitted in their plea agreements that they defrauded the government of excise taxes on 300,000 gallons of diesel fuel. There, as here, the plea agreements also "explicitly reserved [to the government] its right to apprise the court of the totality of the [defendants'] conduct." *Id.* at 396 (internal quotation marks omitted). The defendants nonetheless insisted that the plea agreement implicitly prohibited the government from introducing at sentencing evidence supporting an amount in excess of 300,000 gallons. We rejected this argument based on the government's express reservation of its right to advise the court of *all* relevant conduct. If the defendants' argument was correct, we said, then "it is difficult to fathom what good th[is] language did." *Id.* at 397. We noted as well that the government *cannot* withhold relevant information from the court. *Id.* at 395 n.11 ("[T]he

Government does not have a right to withhold from the sentencing judge all the salient facts of the defendant's conduct.").

■ Because the plea agreement unambiguously forecloses Haslam's claim, we could end our discussion here. "[W]hen a plea agreement is unambiguous on its face, this court generally interprets the agreement according to its plain meaning." *O'Doherty*, 643 F.3d at 217 (quoting *United States v. Monroe*, 580 F.3d 552, 556 (7th Cir. 2009)). Haslam contends, however, that his is one of the rare cases in which evidence extrinsic to the plea agreement is so overwhelming that it's sufficient to overcome the agreement's unambiguous terms. Assuming for the sake of argument that Haslam's premise is correct, the extrinsic evidence he relies on to establish an implied promise comes nowhere close to doing so.

Haslam reminds us that the government acquiesced in his demand to remove the Sample incident from the factual-basis section of the plea agreement. He thinks this is evidence of an implied promise not to present this evidence to the court. We don't see why. The government's acquiescence demonstrates only that it acknowledged Haslam's refusal to admit to the Sample incident as relevant conduct.

Haslam also notes that he and his attorney persistently challenged the truth of Sample's allegations throughout the sentencing process. Relatedly, he identifies several points along the way where he or his attorney attempted to advance an argument that the plea agreement prevented the government from introducing this evidence. These occasions include the initial sentencing hearing before the district judge when his attorney objected to Sample's testimony and Haslam's own letter to his counsel complaining that the "probation department" had "many details ... which definitely would have influenced" his decision to sign the plea agreement.

As the district judge saw it, this evidence showed only that Haslam vigorously contested the truth of Sample's allegations, *not* that the government made an implied promise to forego presenting this evidence to the court. That conclusion was eminently reasonable, and it's also bolstered by Haslam's failure to formally accuse the government of breach until well into the sentencing process. Haslam says he didn't move to withdraw his pleas earlier in the proceedings because he was "trying to get the district court to enforce what he believed to be the government's obligation rather than rushing to withdraw his guilty plea," which would have risked reinstatement of the count carrying the 30-year mandatory minimum. But of course there was no such obligation, and Haslam never tried to "enforce" a supposed promise by the government until well after the district court accepted Sample's testimony. Instead, he challenged her testimony as a factual matter and also argued that the evidence was irrelevant. The judge properly rejected Haslam's claim of breach.

■ Haslam's second argument doesn't fare any better. He contends that he didn't knowingly enter into the plea agreement because he mistakenly thought that it prevented the government from introducing the Sample evidence. The judge summarily rejected this argument, and rightly so.

In his plea colloquy, Haslam told the magistrate judge under oath that he understood the plea agreement and that no promises were made to induce him to plead guilty other than those contained in the written plea agreement itself. These sworn statements directly contradict Haslam's claim that he proceeded on the understanding that the government had made an extrinsic promise to refrain from presenting evidence of the Sample incident at sentencing. Haslam's argument necessarily entails an assertion that he lied to

the magistrate judge. The district judge was entitled to reject this assertion out of hand unless Haslam presented a compelling explanation for his perjury. *United States v. Peterson*, 414 F.3d 825, 827 (7th Cir. 2005) ("[A] motion that can succeed only if the defendant committed perjury at the plea proceedings may be rejected out of hand unless the defendant has a compelling explanation for the contradiction."). He did not do so.

AFFIRMED.