**NONPRECEDENTIAL DISPOSITION**

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted November 18, 2020
Decided November 20, 2020

**Before**

DIANE S. SYKES, *Chief Judge*

MICHAEL S. KANNE, *Circuit Judge*

DIANE P. WOOD, *Circuit Judge*

No. 19-3416

| | |
|---|---|
| UNITED STATES OF AMERICA, <br> *Plaintiff-Appellee*, | Appeal from the United States District Court for the Southern District of Indiana, Evansville Division. |
| v. | No. 3:18-CR-0064-001 |
| ANTONIO D. WATT, <br> *Defendant-Appellant*. | Richard L. Young, <br> *Judge*. |

**ORDER**

Antonio Watt pled guilty to being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1), and he was sentenced to 57 months in prison. Watt appeals his within-guidelines sentence. He argues that because he used the firearm in self-defense, the district court erred in determining that he used it "in connection with another felony offense" and increasing his offense level under U.S.S.G. § 2K2.1(b)(6)(B). But Watt's plea agreement included a broad appellate waiver. Because there is no merit to his argument that the waiver does not apply to this sentencing challenge, we dismiss the appeal.

Watt stipulated to the following facts in his plea agreement: In June 2018, a woman called 911 to report that she heard two shots fired in her apartment complex,

where her children were playing. She stated that her husband saw a man holding a "black pistol" and standing near a white car with the license plate "JJWATT." When police officers arrived, they found Watt standing near a car matching the caller's description and confirmed that it was registered to Watt. Another resident told the officers that, after hearing gunshots, he saw a different "car with Hispanic males" leaving the apartment complex. When Watt consented to a search of his car, officers found a 9mm pistol, ammunition, and a shell casing. Officers also found two shell casings from the pistol in front of a nearby stairway. Watt was arrested, and he told police that he knew he was prohibited from possessing a firearm because of previous felony convictions. Watt explained that he had been in a "verbal altercation" with the Hispanic men seen leaving the complex.

Watt's plea agreement also included a "blanket" waiver of his right to appeal "on any ground" "all provisions of the guilty plea and the sentence imposed." The waiver applied regardless of the sentence imposed, including if the court sentenced him "to a sentence higher or lower than any recommendation of either party, regardless of the defendant's criminal history or how the sentence is calculated."

The plea agreement did not include a specific sentence. The parties agreed that Watt's base offense level was 20 under U.S.S.G. § 2K2.1(a)(4) and that he should receive a three-level reduction for acceptance of responsibility. But they explicitly "reserve[d] the right to present evidence and arguments" to the district court on whether Watt used the firearm in connection with the felony offense of criminal recklessness, which would earn him a four-level increase for the special offense characteristic in U.S.S.G. § 2K2.1(b)(6)(B).

At the combined change-of-plea and sentencing hearing, the district court first adjudged Watt guilty. During the Rule 11 colloquy, *see* FED. R. CRIM. P. 11(b), Watt testified that he had ongoing "disagreements" with some of his neighbors and that, when they approached him with firearms in June of 2018, he "defended" himself by firing two shots in the air, getting them "to leave [him] alone." Watt also confirmed that he understood that the sentencing stipulations in his plea agreement were "recommendations" and "not binding on the court." Finally, the district court read the appellate waiver in the plea agreement and explained that it meant Watt was "giving up or waiving [his] right to appeal the conviction and sentence." Watt confirmed that he understood and agreed to the waiver.

The district court then turned to sentencing. It first reviewed the presentence investigation report prepared by the U.S. Probation Office, which concluded that the guidelines range for Watt's sentence was 57 to 71 months based on an offense level of 21 and Watt's category IV criminal history. The calculation included a four-level increase under § 2K2.1(b)(6)(B), because, by firing the gun in his apartment complex, Watt used the firearm in his possession in connection with the felony offense of criminal recklessness, in violation of Ind. Code § 35-42-2-2.

The district court heard argument on the offense-level increase. Watt had objected to it in his sentencing memorandum, arguing that it was inappropriate because he had "not admitted and was not convicted of another felony in connection with possession of the firearm at issue in this case." Watt reiterated this objection at sentencing and further argued that he shot the gun in self-defense against the "Hispanic males" thus "negat[ing]" any felony. But the district court concluded that the four-level increase applied, finding by the preponderance of the evidence that Watt "discharged the weapon twice at the apartment complex into the air with children present." Watt was sentenced to 57 months in prison.

Watt appeals only the district court's decision to apply U.S.S.G. § 2K2.1(b)(6)(B), arguing that because the government failed to show that he did not act in self-defense, any felony connected to his use of the gun was "negat[ed]." Before considering the merits, however, we must assess whether Watt's appellate waiver forecloses his appeal. An appellate waiver "stands or falls with the plea agreement itself, so if the agreement is valid and enforceable, the waiver is too." *United States v. Haslam*, 833 F.3d 840, 844 (7th Cir. 2016). Watt does not argue that his guilty plea was not knowing and voluntary, and he does not seek to withdraw it. And he cannot contest the appellate waiver without challenging the entire agreement. *See United States v. Whitlow*, 287 F.3d 638, 640 (7th Cir. 2002). He must give up the benefits he received if he wants to deprive the government of the benefit of its bargain. *Id.*; *United States v. Hare*, 269 F.3d 859, 860–61 (7th Cir. 2001). Nor does he contend that there are "exceptional" circumstances present that would permit us to review his sentence notwithstanding a waiver. *See, e.g., United States v. Litos*, 847 F.3d 906, 910–11 (7th Cir. 2017). We therefore must enforce the waiver. *See United States v. Nulf*, 978 F.3d 504, 506 (7th Cir. 2020).

Watt argues that his appeal is not covered by the waiver because the plea agreement "specifically reserve[d] the right to dispute" the application of § 2K2.1(b)(6)(B). We interpret an appellate waiver using the general principles of contract law. *Haslam*, 833 F.3d at 845. Here, the plea agreement's unambiguous terms

foreclose Watt's argument. *See United States v. Malone*, 815 F.3d 367, 370 (7th Cir. 2016). Although the agreement permitted the parties "to present evidence and arguments" about § 2K2.1(b)(6)(B) to the district court, it did not exclude the ruling on this issue from Watt's broad waiver of his right to appeal the "sentence imposed." Rather, the waiver expressly extends to Watt's right to challenge his sentence "on *any* ground" regardless of "how the sentence is calculated by the court." (Emphasis added.) And Watt affirmed that he understood this during the hearing. We will therefore enforce the waiver by dismissing the appeal. *See United States v. Johnson*, 934 F.3d 716, 720 (7th Cir. 2019).

DISMISSED