In the

# United States Court of Appeals
## for the Seventh Circuit

No. 21-2785

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

DON E. BEVLY,

*Defendant-Appellant*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 1:18-CR-528 — **Manish S. Shah**, *Judge.*

ARGUED SEPTEMBER 15, 2022 — DECIDED AUGUST 7, 2024

Before SYKES, *Chief Judge*, and RIPPLE and KIRSCH, *Circuit Judges*.

SYKES, *Chief Judge*. Don Bevly began robbing banks in 1993 and is currently serving a third federal prison term for his latest robbery spree. He pleaded guilty to two counts of bank robbery and one count of attempt, *see* 18 U.S.C. § 2113(a), and he stipulated to six additional bank robberies as relevant conduct. At sentencing the government established that Bevly made a death threat while committing two of the crimes, so

the district judge increased his offense level by two levels as provided in the Sentencing Guidelines. *See* U.S.S.G. § 2B3.1(b)(2)(F). The judge also sentenced Bevly as a career offender based on his six prior convictions for bank robbery. *See id.* § 4B1.1.

Bevly contends that the government promised not to pursue the threat enhancement under § 2B3.1(b)(2)(F) and reneged on that promise. He raised this claim at sentencing, but the judge rejected it based on the plain terms of the plea agreement and Bevly's statements during the guilty-plea colloquy. That ruling was manifestly correct. Bevly also argues that the judge violated the Sixth Amendment by making factual findings that increased his advisory guidelines range. He acknowledges, as he must, that the Supreme Court has rejected this claim; he has simply preserved it for further review. Bevly's last argument is a challenge to his designation as a career offender. He contends that bank robbery does not qualify as a crime of violence under the career-offender guideline. Circuit precedent holds otherwise, and Bevly hasn't given us a good reason to reverse course. We affirm the judgment.

## I. Background

Don Bevly, age 64, has spent much of his adult life committing crimes and serving time in jail and in state and federal prisons. Since 1993 his criminal conduct has primarily entailed bank robberies in Georgia, Illinois, and northern California. In 1994 he was convicted in federal court in Atlanta of three bank robberies and was sentenced to 114 months in prison. In 2003 he was convicted in federal court in Chicago of three more bank robberies and was sentenced to 151 months in prison. Not five months after his release from

prison for the 2003 robberies, he robbed two banks in Indiana. The Indiana robberies were pleaded down to state theft charges, and Bevly served two consecutive two-year terms in state prison.

This case concerns his most recent series of bank robberies. In the summer of 2018, Bevly went on a robbery spree in northern California and Illinois. The charges at issue here arise from a week in August 2018 when he robbed two banks and attempted to rob a third in and around Chicago.

Specifically, on August 25, 2018, Bevly entered a PNC Bank in Zion, Illinois. He approached the counter and gave the teller a note announcing the robbery and commanding her to give him the 20-, 50-, and 100-dollar bills in her cash drawer. The teller was in the process of closing her station for the day and had already moved her cash drawer to the back of the bank. She told Bevly she had no money. He threatened to shoot her if she did "anything funny" and then moved to the next teller. His attempt to get money from the second teller also failed, and he left the bank.

On August 28, three days later, Bevly entered a PNC Bank in Waukegan, Illinois. He announced a robbery and showed a demand note to a teller. She told him she did not have any money in her drawer, so he moved to the next teller and told him that he would shoot him in the face if he did not turn over the money in his drawer. In the face of that threat, the teller complied with Bevly's demands, and Bevly left the bank with about $4,500. On August 31, three days later, Bevly robbed a TCF Bank on Division Street in Chicago. He used a similar demand note and left the bank with $200.

Based on this conduct, Bevly was charged with attempted bank robbery (for the Zion attempt) and two counts of bank robbery (for the Waukegan and Division Street bank robberies), all in violation of 18 U.S.C. § 2113(a). Further investigation revealed that Bevly had committed six additional bank robberies in Illinois and northern California between June 2015 and July 2018.

More than 18 months after his indictment, Bevly entered into a plea agreement in which he agreed to plead guilty to the three charged counts and stipulated to the six additional bank robberies as relevant conduct. The written plea agreement explains the factual basis for the charged counts and the six additional robberies. It also describes the parties' agreement about certain aspects of the anticipated calculation of the advisory imprisonment range under the Sentencing Guidelines—and, importantly, specific points of disagreement as well. Regarding the latter, the agreement explains that the parties disagreed about the applicability of the threat-of-death enhancement under § 2B3.1(b)(2)(F):

> It is the government's position that pursuant to Guidelines § 2B3.1(b)(2)(F), the offense level is increased by 2 levels, because the offenses involved a threat of death. It is defendant's position that the enhancement pursuant to § 2B3.1(b)(2)(F) does not apply. Each party is free to present evidence and argument to the Court on this issue.

This language appears not once but twice in the plea agreement: first in the section discussing the parties' positions on the court's calculation of the guidelines range for the charged offenses, and again in the section discussing the

parties' positions on the stipulated robberies. The agreement also addresses the parties' dispute about the career-offender guideline, § 4B1.1(b)(3): it was the government's position that Bevly should be sentenced as a career offender; Bevly disagreed and reserved the right to argue against career-offender status.

The agreement also contains a section explaining the government's nonbinding prediction about the anticipated advisory sentencing range under the guidelines. Based on the facts known to it at the time, the government predicted a guidelines imprisonment range of 151 to 188 months. But the agreement also includes standard language explaining that the court would determine both the guidelines range and the appropriate sentence—and an express acknowledgement that Bevly understood this point. Finally, the agreement contains an express acknowledgement by Bevly and his attorney that the government made no promises, agreements, or representations other than those set forth in the agreement.

At the change-of-plea hearing, Bevly confirmed under oath that he had read the plea agreement, discussed it with his attorney before he signed it, and understood its terms. The judge noted the government's anticipated guidelines range but explained that he would determine the applicable range and that his calculations might differ from those predicted in the plea agreement. When the judge asked Bevly if he understood, Bevly responded that he did. Bevly added, however, that he wanted "the record to reflect" that he did not threaten anyone during the robberies and was not admitting that he was a career offender. The judge acknowledged that these matters were in dispute and explained that under the agreement, Bevly was free to make any sentencing

recommendation he wished—as was the government—but that neither party's recommendation was binding on the court. When the judge again asked if Bevly understood, he replied that he did.

Later in the colloquy the judge asked Bevly whether any promises other than those in the plea agreement had been made to induce him to plead guilty. Bevly answered, "No." The judge then invited the prosecutor to describe the factual basis for the three charged offenses. She did so. After a bit more dialogue, the judge asked Bevly for his plea. He entered guilty pleas to each count, and the judge found the pleas knowing and voluntary and accepted them. As the judge set a sentencing date and the hearing wrapped up, the prosecutor reminded the court, counsel, and Bevly that the government would call witnesses at the sentencing hearing to establish the threat enhancement and Bevly's career-offender status. The prosecutor reiterated that those issues were in dispute—as the plea agreement and guilty-plea colloquy clearly reflected—so the government "reserved [the] right to be able to raise [them] at sentencing." Neither Bevly nor his counsel objected.

The government did just that. At sentencing the prosecutor called bank employees to testify about Bevly's robberies and his threats to shoot them. Bevly personally interjected, claiming that the government had promised to refrain from pursuing the threat enhancement. The judge overruled the objection based on the plain language of the plea agreement, which together with the guilty-plea colloquy confirmed that no such promise was made. After hearing testimony from the government's witnesses, the judge applied the threat enhancement under § 2B3.1(b)(2)(F) because Bevly had threated to shoot the tellers during two of the charged robberies. The

judge also applied the career-offender guideline, § 4B1.1, because Bevly's six prior convictions for federal bank robbery under § 2113(a) qualified as crimes of violence as defined in § 4B1.2(a).

Together these findings produced an offense level of 32, which was reduced to 29 to account for a three-level credit for acceptance of responsibility. When combined with Bevly's criminal history category of VI, the final calculation yielded an advisory imprisonment range of 151 to 188 months, just as the government had predicted. After reviewing the statutory sentencing factors, the judge imposed a below-guidelines sentence of 144 months.

## II. Discussion

On appeal Bevly reiterates his claim that the government breached its promise not to pursue the threat enhancement under § 2B3.1(b)(2)(F). The judge determined that no such promise was made; we review that ruling for clear error. *See United States v. Smith*, 989 F.3d 575, 583 (7th Cir. 2021); *United States v. Haslam*, 833 F.3d 840, 844 (7th Cir. 2016).

There was no error. As the judge explained, Bevly's plea agreement clearly establishes that the government did *not* promise to forego seeking the enhancement. Quite the opposite. The agreement plainly states that the parties disagreed about the application of the threat enhancement and *expressly reserved* the government's right to seek the enhancement at sentencing. Plea agreements are generally interpreted according to "principles of contract law," and an unambiguous agreement is given "its plain meaning." *Haslam*, 833 F.3d at 845–46 (quotation marks omitted). The unambiguous terms of Bevly's plea agreement conclusively refute his claim that the

government promised to refrain from pursuing the threat enhancement.

If more were needed, Bevly confirmed under oath during the guilty-plea colloquy that the government made no promises other than those reflected in his plea agreement. Bevly's claim to the contrary "necessarily entails an assertion that he lied" to the judge at the change-of-plea hearing. *Id.* at 846–47. When that's the case, the judge is "entitled to reject th[e] assertion out of hand unless [the defendant] present[s] a compelling explanation for his perjury." *Id.* at 847; *see also United States v. Peterson*, 414 F.3d 825, 827 (7th Cir. 2005). "Entry of a plea is not some empty ceremony, and statements made to a federal judge in open court are not trifles that defendants may elect to disregard." *United States v. Stewart*, 198 F.3d 984, 987 (7th Cir. 1999). Bevly offers no reason, let alone a compelling one, to disregard his sworn statements during the guilty-plea colloquy.

Bevly next argues that the judge violated his Sixth Amendment rights by making factual findings that increased his advisory imprisonment range under the guidelines. He contends that the "rule of *Apprendi*"[1] should apply to guidelines sentencing, so that any fact that increases the advisory guidelines range must be either found by a jury beyond a reasonable doubt or admitted in a guilty plea. Bevly concedes, as he must, that Supreme Court precedent forecloses this claim. *See Alleyne v. United States*, 570 U.S. 99, 116 (2013) (noting that "broad sentencing discretion, informed by judicial factfinding, does not violate the Sixth Amendment"); *United States v.*

---

[1] *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000).

*Holton*, 873 F.3d 589, 591 (7th Cir. 2017) ("The Supreme Court has long authorized judges to consider at sentencing criminal conduct that is relevant to the offense of conviction … so long as that conduct has been proved by a preponderance of evidence." (quotation marks omitted)); *United States v. Austin*, 806 F.3d 425, 433 (7th Cir. 2015) ("*Alleyne* continued to endorse broad sentencing discretion, noting that such discretion is not unlawful even if its exercise depends on facts found by the judge."). Bevly raises this argument merely to preserve it for Supreme Court review. He has done so.

Bevly's last contention is that bank robbery in violation of § 2113(a) is not a crime of violence for purposes of the career-offender guideline, which classifies as a career offender any defendant who is over 18 years of age and commits "a felony that is either a crime of violence or a controlled substance offense" and "has at least two prior felony convictions of either a crime of violence or a controlled substance offense." § 4B1.1(a). The term "crime of violence" includes any offense under federal or state law that is punishable by a term exceeding one year and that "has as an element the use, attempted use, or threatened use of physical force against the person of another." § 4B1.2(a)(1).

We have previously held that bank robbery in violation of § 2113(a) is a crime of violence under the career-offender guideline. *United States v. Campbell*, 865 F.3d 853, 857 (7th Cir. 2017) ("Bank robbery by intimidation [under § 2113(a)] is a crime of violence under … § 4B1.2(a)(1).").[2] Bevly argues that

---

[2] *Campbell* addressed the pre-2016 version of the guidelines, the same version that applies here; robbery was later added to the career-offender

the Supreme Court's decision in *Borden v. United States*, 593 U.S. 420 (2021), unsettles this circuit precedent. It does not. In *Borden* a plurality of the Court held that the Tennessee crime of "reckless aggravated assault" is not a qualifying "violent felony" under the so-called "elements clause" of the Armed Career Criminal Act, 18 U.S.C. § 924(e)(2)(B), which uses materially similar language as the "crime of violence" definition in the career-offender guideline. The plurality reasoned that a crime requiring only a *mens rea* of recklessness is not a qualifying predicate under the Act. *Id.* at 445.

*Borden* has no effect here. The crime of bank robbery requires intentional conduct. As relevant here, § 2113(a) provides that "[w]hoever, *by force and violence, or by intimidation*, takes, or attempts to take, from the person or presence of another … any property or money or any other thing of value belonging to, or in the care, custody, control, management, or possession of, any bank," commits the federal crime of bank robbery. The Supreme Court has held that § 2113(a) requires proof of "*general intent*—that is, that the defendant possessed knowledge with respect to the *actus reus* of the crime (here, the taking of property of another by force and violence or intimidation)." *Carter v. United States*, 530 U.S. 255, 268 (2000).

Drawing on *Carter*, we have reiterated that the "intimidation" form of the § 2113(a) offense requires the government to "prove that the defendant acted *intentionally* in a way that would cause a reasonable person to be intimidated." *United States v. Williams*, 864 F.3d 826, 829 (7th Cir. 2017) (emphasis added). Bank robbery in violation of § 2113(a) cannot be

---

guideline's list of specifically enumerated crimes of violence. *See United States v. Campbell*, 865 F.3d 853, 854 n.1 (7th Cir. 2017).

committed by reckless conduct, so *Borden* does not undermine our holding in *Campbell*. Bevly was properly sentenced as a career offender.

AFFIRMED